IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IVAN RAY BEGAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:17-CV-2639-N-BT |
| | § | |
| MR. LEAP, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are (1) Defendant Mr. Leap's Rule 12(b)(6) Motion to Dismiss (ECF No. 16), asking the Court to dismiss Plaintiff's First Amendment claims brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), and (2) Plaintiff Ivan Begay's "Motion for Relief, from 'Order' Entered May 22, 2018, Pursuant to Rule 60(b)(1)." (ECF No. 22). For the reasons stated, the District Court should GRANT Defendant's Motion, and Plaintiff's Motion is DENIED.

**Background**

On September 26, 2017, Plaintiff, a federal prisoner, serving a 302-month sentence for aggravated sexual abuse on an Indian reservation, filed a complaint asserting claims against federal prison officials for violating his First Amendment rights and requesting damages as compensation. Compl. 1, 4-6 (ECF No. 3); Def.'s Br. 6-7 (ECF No. 17). Though Plaintiff has been housed at several different federal

1

corrections institutions ("F.C.I."s), the relevant events occurred at F.C.I. Seagoville, Texas in October 2015. Compl. 6.

Plaintiff alleges that Special Investigative Services ("S.I.S") Agents Leap and Arajo interviewed him, along with an agent from the Office of Inspector General, about Ms. Dunn, an F.C.I. Seagoville employee. *Id.*; Def.'s Br. 7. Plaintiff maintains that the agents threatened him with additional prison time if he did not cooperate with the investigation. Compl 6. After they questioned him, Plaintiff states that he encountered Ms. Dunn, told her about the investigation, and asked her whether he needed an attorney. *Id.* 7. Later, Plaintiff recounts, Agents Leap and Arajo summoned him and demanded to know what he said to Ms. Dunn. *Id.* Plaintiff told the agents that he asked her why the agents were questioning him about her and threatening him with additional prison time if he withheld any information or made any false statements, and whether he needed his own attorney. *Id.* Plaintiff claims, as a result, that Mr. Leap told him that he had ruined his stay at Seagoville. *Id.* Plaintiff maintains that agents Leap and Arajo were "so upset, they close [sic] the entire Seagoville Compound, to prevent [him] from, speaking to [his] friends." *Id.* Plaintiff further asserts that he was later placed in a special housing unit; while there, Mr. Leap came to Plaintiff's door and told him that he had also ruined his chance to be transferred to F.C.I. Englewood, Colorado. *Id.* 8. Plaintiff asked, "What did you do? Is this your doing?" *Id.* And, Mr. Leap allegedly replied, "Yup!" *Id.* Plaintiff was later transferred instead to F.C.I. Fort Dix, New Jersey. *Id.* Plaintiff

2

claims that Mr. Leap effectuated his transfer to Fort Dix as retaliation for Plaintiff's exercising his First Amendment right. *Id.* 4.

In response to Plaintiff's Complaint, Defendant Leap filed his Motion to Dismiss, arguing that the Court should dismiss Plaintiff's claims against him on grounds of qualified immunity and failure to state a claim under *Bivens*. Plaintiff filed a response, (ECF No. 18), but later filed a motion (ECF No. 20) requesting permission to file an amended response to Defendant's Motion to Dismiss. The Court granted Plaintiff's request and required him to file a consolidated response by June 1, 2018. May 22, 2018 Order (ECF No. 21). Plaintiff did not file a consolidated response and instead filed his "Motion for Relief, from 'Order' Entered May 22, 2018, Pursuant to Rule 60(b)(1)." (ECF No. 22). Defendant responded (ECF No. 24) to Plaintiff's Motion and subsequent "Notice of Relation Back Amendment." Notice (ECF No. 23.). Accordingly, both motions are fully briefed and ripe for determination.

## I. Defendant's Motion to Dismiss

### Legal Standards

#### 12(b)(6)

When deciding a 12(b)(6) motion for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendant's Motion to Dismiss, therefore, Plaintiff's Complaint must contain sufficient factual matter to

3

state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, the pleadings, for the purpose of determining a Rule 12(b)(6) motion, include documents attached to the pleadings and to the motion to dismiss so long as they "are referred to in the plaintiff's complaint and are central to [his] claim." *Causey*

4

*v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

### Bivens

In *Bivens*, the United States Supreme Court for the first time "recognized 'an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights,'" specifically, under the Fourth Amendment. *Butts v. Martin,* 877 F.3d 571, 587 (5th Cir. 2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001); citing *Bivens*, 403 U.S. at 388). Unlike the multitude of claims that may be brought against state officials under 42 U.S.C. § 1983, "a *Bivens* remedy is not available for all constitutional violations." *Id.; see also Iqbal*, 556 U.S. at 675-76 ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'") (citations omitted).

In the decade after *Bivens*, the Supreme Court decided two cases in which it recognized an implied cause of action outside of the Fourth Amendment context; in *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that "the Fifth Amendment Due Process Clause gave [the petitioner] a damages remedy for gender discrimination," and in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the "Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner's estate] a damages remedy for failure to provide adequate medical treatment." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017). "[Those] three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the

5

Court has approved of an implied damages remedy under the Constitution itself." *Id.* at 1855. And since *Carlson*, the Court has "notabl[y] change[d] . . . [its] approach to recognizing implied causes of action . . . ma[king] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citing *Iqbal*, 556 U.S. at 675).

Though expanding *Bivens* is now a disfavored judicial activity, the Supreme Court has not foreclosed the possibility. The Supreme Court held that in considering a request for a new *Bivens* remedy, it first looks to "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages," and second, even if there is no alternative, whether there are "any special factors counselling hesitation before authorizing a new kind of federal litigation." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). The Supreme Court has not defined "special factors counselling hesitation," but has noted that they encompass those things that cause a court to hesitate before determining that it "is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. Implying new causes of action under the Constitution implicates separation-of-powers concerns such that "[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new

substantive legal liability." *Id.* at 1857. (citing *Schweiker v. Chilicky*, 487 U.S. 412, 426-27 (1988)) (internal quotation marks omitted).

## Analysis

By his Complaint, Plaintiff asserts a First Amendment retaliation claim against Defendant under *Bivens*. The Fifth Circuit prohibits prison officials from retaliating against prisoners for exercising their constitutional rights. *Zebrowski v. U.S. Fed. Bureau of Prisons*, 558 F. App'x 355, 358 (5th Cir. 2014) (per curiam) (citing *Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir. 1986)). To establish a retaliation claim, a prisoner must show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* (citing *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)). In this case, even if Plaintiff could establish facts to satisfy all the elements for a retaliation claim, his claim would fail because he lacks a procedural mechanism by which to bring it.

Plaintiff cannot bring his First Amendment retaliation claim against Defendant, a federal official, under *Bivens*, because neither the Supreme Court nor the Fifth Circuit has recognized an implied cause of action for First Amendment violations. In fact, when confronted with an opportunity to do so, the Supreme Court "decline[d] 'to create a new substantive legal liability without legislative aid and as at the common law'" because the Court determined that, "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush*, 462 U.S. at 390 (quoting *United States v. Standard Oil Co. of*

7

*Cal.*, 332 U.S. 301, 302 (1947)); *accord Iqbal*, 556 U.S. at 675 (assuming without deciding that *Bivens* applies to First Amendment claims but noting, "we have declined to extend *Bivens* to a claim sounding in the First Amendment") (citing *Bush,* 462 U.S. at 368); *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.") (citing *Iqbal*, 556 U.S. at 675; *Bush,* 462 U.S. at 368).

The Fifth Circuit also has "never framed as a holding a rule that *Bivens* extends to First Amendment retaliation cases." *Brunson v. Nichols*, 875 F.3d 275, 279 n.3 (5th Cir. 2017); *see also Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) ("Because the Supreme Court has not recognized a *Bivens* remedy in the First Amendment context, Butts's claim likely presents a new context under *Bivens*.") (citing *Ziglar*, 137 S. Ct. at 1859; *Iqbal*, 556 U.S. at 675). Although in the past, the Fifth Circuit assumed that substantive claims under § 1983 and *Bivens* were coextensive, and that *Bivens* supplied a remedy in retaliation cases, *Brunson*, 875 F.3d at 279 n.3 (citing cases), the Circuit recently has declined to make such assumptions, in light of current Supreme Court decisions counseling away from extending *Bivens* to claims sounding in the First Amendment. *Id.* ("[T]he Supreme Court strongly cautioned against extending *Bivens* to new contexts. A First Amendment claim is likely a new context." (internal citation omitted)).

Because it involves a different constitutional right than the rights approved for *Bivens* remedies under controlling precedent, the Court finds that Plaintiff's retaliation claim presents a new *Bivens* context. Therefore, the Court must

8

determine whether it should expand the *Bivens* remedy to encompass Plaintiff's claim. To do this, the Court considers whether any existing remedial processes preclude a *Bivens* remedy and, even if there is no alternative, whether there are any "special factors" that counsel hesitation in recognizing a new judicially-created remedy.

In this case, Plaintiff appears to have had an alternative remedy for his alleged harm. Specifically, Plaintiff had access to the Bureau of Prisons' administrative grievance process, codified at 28 C.F.R. §§ 542.10-542.19, which permits "inmate[s] to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S. Ct. at 1858. Indeed, "several courts have explicitly recognized the administrative remedy program ("ARP") available in the prison setting as an alternative process foreclosing a personal-capacity damages remedy." *Brunson v. Nichols*, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018) (citing cases), *adopted by,* 2019 WL 545479 (W.D. La. Feb. 11, 2019). Plaintiff attached to his Complaint his submitted informal resolution form, a request for administrative remedy, and several rejection notices, which indicate he engaged the administrative grievance process. Compl. 14-21. The availability of this process likely precludes a *Bivens* remedy. *See Vega v. United States*, 881 F.3d 1146, 1154 n.4 (9th Cir. 2018) ("In this case [involving private prison contractors] . . . the [Administrative Remedy Program] provides an

9

adequate, and more appropriate, remedy to vindicate Vega's rights to access the courts and to procedural due process."); *Buenrostro v. Fajardo*, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) (dismissing *Bivens* claim against defendant for alleged violation of inmate's First Amendment right because inmate had alternative remedy of BOP administrative grievance process, filing writ of habeas corpus, and injunctive relief to redress claim); *Crowder v. Jones*, 2017 WL 5889717, at *3 (S.D. Ind. Nov. 29, 2017) (declining to find inmate had implied right of action under *Bivens* for First Amendment claim because BOP's administrative remedy provided relief for inmate wrongfully denied a religious diet); *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017) (dismissing inmate's claim of alleged retaliatory excessive force against officer because inmate had alternative remedies, including BOP administrative remedies).

Further, even if the administrative grievance process does not constitute an alternative remedy that would preclude the Court from recognizing a new *Bivens* remedy, numerous special factors dictate hesitation in extending *Bivens* to Plaintiff's alleged retaliation claim. Chief among those factors is that expanding *Bivens* to recognize a damages remedy for First Amendment violations implicates significant separation-of-powers concerns. The analysis required necessarily involves "an assessment of [the new implied remedy's] impact on governmental operations systemwide"—an undertaking for which Congress is best suited. *Ziglar*, 137 S. Ct. at 1858. To be sure, the Supreme Court has cautioned that "[i]t is not necessarily a judicial function to establish whole categories of cases in which

10

federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others." *Id.* "Those matters include the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the . . . legal system [is] used to bring about the proper formulation and implementation of public policies." *Id.* "These and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Id.*

In addition to the view that Congress is most institutionally competent to determine whether to expand *Bivens*, Defendant also argues that separation-of-powers considerations between the Judicial and Executive Branches counsel hesitation. Specifically, Congress has delegated the authority to ensure the safety and order of the federal prisons to the Executive Branch, and courts accord prison officials substantial deference on questions involving institutional operations. *See, e.g., Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[P]rison administrators, and not the courts, are to make the difficult judgments concerning institutional operations." (quotation marks, brackets, and citation omitted)). Defendant asserts that practical considerations weigh against implying a new cause of action under *Bivens* because such a remedy would adversely affect prison officials' ability to ensure the safety and order of the federal prisons, namely by hindering their ability to discharge day-to-day duties and imposing significant system-wide costs on the government. For example, prison officials may choose not to investigate

11

misconduct within the prison if they know that doing so could expose them to the threat of damages liability for First Amendment violations, as was the case here where Plaintiff's First Amendment claim allegedly arose out of Defendant's investigation of Ms. Dunn. And, if First Amendment retaliation claims are allowed during the course of prison investigations, inmates or staff seeking to impede the investigation could simply assert *Bivens* claims against the investigating officers. Plaintiff fails to respond to any of Defendant's arguments. Indeed, he fails to make any arguments concerning the propriety of expanding *Bivens* to this context.

Independent research further reveals that other district courts recently faced with similar questions about implying a *Bivens* remedy in the First Amendment context have declined to do so because such action would "violate Congress's intent, create increased costs on the Bureau of Prisons, and have a harmful effect on institutional security and federal officers' discharge of their duties." *Butler v. Porter*, 2018 WL 6920355, at *3 (W.D. La. Sept. 10, 2018), *adopted by*, 2019 WL 81677 (W.D. La. Jan. 2, 2019). In *Andrews*, 301 F. Supp. 3d at 1135, the court pointed out that such an extension "could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any use of force [or, in this case, transfer among F.C.I.s] by the officers resulted from retaliatory animus." Also, "[a]ny increase in suits by inmates necessarily involves increased litigation costs to the Government and burdens on the individual employees who must defend such claims." *Id.* Further because First Amendment retaliation claims require inquiry into a defendant's subjective state of mind, the

*Andrews* court determined such claims often would present genuine issues of material fact that could not easily be resolved on summary judgment, and "[t]his, in turn, would necessitate trials and further increase litigation costs." *Id.*

In sum, because the Supreme Court has not determined that *Bivens* provides a remedy against federal officials for First Amendment violations, and the Supreme Court has cautioned against expanding *Bivens* in new contexts—particularly where, as here, special factors counsel hesitation and a plaintiff has alternative remedies—the Court should dismiss Plaintiff's First Amendment retaliation claim against Defendant.

## Plaintiff's Rule 60(b) Motion

Plaintiff's "Motion for Relief, from 'Order' Entered May 22, 2018, Pursuant to Rule 60(b)(1)" essentially asks the Court for permission to amend his Complaint. Mot. 1 ("After further study of the "Order," he realized his mistake, and seeks to remedy, with a [sic] attached Amended Motion, showing incorporated amending between Original Motion and Amended Pleading."); *see also* Notice 1. After filing that motion, Plaintiff filed an amended Complaint without leave. Notice. Accordingly, the Court construes Plaintiff's Motion as a Motion for Leave to Amend and his Notice of Relation Back Amendment as a proposed amended complaint.

Plaintiff's Motion is denied because his proposed amendment would be futile. Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading once as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the

13

court's leave." *Id.* 15(a)(2). Under a Rule 15(a) analysis, district courts have discretion whether to grant motions to amend "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (ellipses included in original) (internal citation and quotation marks omitted). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

In Plaintiff's Notice, he proposes to add claims based on the same facts, alleging that, in addition to his First Amendment right, Defendant violated his Fourth, Fifth and Eighth Amendment rights. Notice 1-5. Plaintiff asserts that Defendant violated his Fourth Amendment right by "seizing" his speech as evidence. *Id.* 2. However, "[t]he Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting U.S. CONST. amend. IV). Speech is not protected by the Fourth Amendment. Plaintiff, therefore, has not stated a claim for a Fourth Amendment violation and amending his Complaint to include such an allegation would be futile.

Next, Plaintiff asserts that Defendant violated his Fifth Amendment right because he had a right to remain silent while he was questioned about Ms. Dunn.

14

Notice 2. The Fifth Amendment's self-incrimination clause provides that "'[n]o person . . . shall be compelled *in any criminal case* to be a *witness* against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (emphasis and ellipses in original) (quoting U.S. CONST. amend. V). However, "the Fifth Amendment privilege against compulsory self-incrimination . . . [is] personal to the defendant, [and] does not extend to the testimony or statements of third parties called as witnesses at trial." *United States v. Nobles*, 422 U.S. 225, 234 (1975); *see also Rakas v. Illinois*, 439 U.S. 128, 140 n.8 (1978) (noting that the Fifth Amendment privilege against self-incrimination is a "purely personal right") (citations omitted); *Bradley v. Hammonds*, 159 F.3d 1357, 1357 (5th Cir. 1998) (per curiam) ("It is well settled that the Fifth Amendment's protection against self-incrimination is purely personal and may not be asserted on behalf of third parties."). The Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 460 (1966), that the Fifth Amendment privilege against self-incrimination is only fulfilled when "the person is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." Here, the alleged internal investigation at the crux of Plaintiff's claim concerned Ms. Dunn and not him. Plaintiff did not have a Fifth Amendment privilege against incriminating Ms. Dunn, and *Miranda's* prophylactic measures are inapposite. Thus, Plaintiff also has not stated a claim for a Fifth Amendment violation and amending his Complaint to include such a claim would also be futile.

Last, Plaintiff alleges that Defendant violated his Eighth Amendment right by exposing him to an excessive risk of harm in transferring him to F.C.I. Fort Dix,

New Jersey. Notice 3. A prison official violates an inmate's Eighth Amendment right where he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Put differently, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment," and, therefore, cannot be an Eighth Amendment violation. *Id.* at 838. Here, Plaintiff does not allege any facts indicating that Defendant knew of an excessive risk to Plaintiff's health and safety and disregarded it, either while he was at Seagoville or at Fort Dix. Plaintiff only alleges in a conclusory fashion that Defendant, an official at F.C.I. Seagoville, did not protect him from harm that he encountered at F.C.I. Fort Dix. Notice 3-4. Thus, Plaintiff also fails to state an Eighth Amendment claim against Defendant and amending his Complaint to add that claim would be futile.

Plaintiff has not asserted any new claims in his proposed amended Complaint that would survive a Rule 12(b)(6) motion to dismiss. Therefore, Plaintiff's Motion is DENIED.

### Recommendation

For the reasons stated, the District Court should GRANT Defendant's Motion to Dismiss (ECF No. 16) and DISMISS Plaintiff's claims against him with prejudice.

Plaintiff's Motion (ECF No. 22) is DENIED.

**SO RECOMMENDED.**

February 26, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).